FILED IN CHAMBERS
U.S.D.C. Rome

OCT 16 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| GLOBAL PRINTING SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYNTHIA L. ALLISON, <br><br> Defendant and Third-Party Plaintiff, <br><br> v. <br><br> BARRY N. WILLIAMS, <br> Third-Party Defendant | CIVIL ACTION <br><br> NO. 4:05-CV-226-RLV |

### O R D E R

This is a declaratory judgment action involving a patent; the plaintiff also asserts a claim under the Lanham Act, 15 U.S.C. § 1121, and state law claims for defamation and tortious interference with business relations. Pending before the court is the defendant's motion to dismiss Count IV of the amended complaint, the defamation count.

### I. FACTUAL BACKGROUND

The following statement of facts is drawn from the plaintiff's amended complaint, since on a motion to dismiss, the court accepts all well-pleaded factual allegations in the complaint as true and construes the facts in a light most favorable to the non-moving party. Dacosta v. Nwachukwa, 304 F.3d 1045 (11th Cir. 2002).

Barry Williams, an owner of Global Printing Solutions, Inc., invented a product related to flexographic ink vehicles and flexographic ink compositions; this technology is embodied in United States Patent Application No. 60/622,379. Williams and Lamar Guthrie formed GPS in 2004. In July 2004 Williams transferred and assigned the technology embodied in the patent application to GPS. Williams filed the patent application in October 2004 and immediately assigned the application to GPS.

Cynthia Allison worked for Star Color, Inc., a business owned by Williams from late December 2003 until June 2004. Allison is currently employed by AK Enterprises, a competitor of GPS; it is Allison's work for her current employer that forms the basis for GPS's claim of a Lanham Act violation. In a civil suit for breach of a lease agreement brought by Williams against Allison, Allison claimed inventorship rights in the technology embodied in the patent application. These assertions form the basis of GPS's claims for declaratory judgment regarding inventorship and ownership of the technology embodied in the patent application.

Allison is in possession of a letter dated June 25, 2004, from Alexander P. Woolcott, of Kilpatrick & Stockton LLP, to Deborah P. Fisher, of Burr & Forman LLP, which contains false information regarding her alleged status as an executive officer of Innovative Printing Specialists, Inc., her status as a co-inventor of the technology embodied in the patent application, Williams's alleged lack of capacity to enter into an agreement to form GPS, and the

2

alleged invalidity of that agreement and assignment. Allison has disseminated that letter to several third parties, including potential customers, clients, and business partners of GPS despite the fact that she knew the letter contained false information. These misrepresentations have damaged GPS's reputation with those third parties and have affected its business. Allison's dissemination of that letter was made with malice and was made intentionally without legal justification or excuse.

## II. LEGAL DISCUSSION

Under Georgia law, "libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). To prevail on a defamation claim, a plaintiff must prove the four elements of a defamation claim: "1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the 'actionability of the statement irrespective of special harm.'" Mathis v. Cannon, 276 Ga. 16 (2002) (quoting the Restatement (Second) of Torts (1997) at ¶ 558. The Georgia Supreme Court has put a gloss on these elements by also requiring that the allegedly defamatory words "refer to some ascertained or ascertainable person, and that person must be the plaintiff. If the words used

3

really contain no reflection on any particular individual, no averment or innuendo can make them defamatory." Ledger-Enquirer Co. v. Brown, 214 Ga. 422, 423-24 (1958), quoting Odgers on Libel and Slander. *See also* Fisk v. Stockton, 171 Ga. App. 601 (1984) (quoting the same language).

In moving to dismiss Count IV, Allison points out that GPS is not mentioned in the letter. The first sentence of the letter states, "As you are aware, we have been engaged by Barry Williams and Cynthia Allison to represent Innovative Printing Specialists, Inc. ("IPS") in connection with discussion with your client Lamar Guthrie and his company Chief Container with respect to a possible transaction with IPS." The letter goes on to criticize Burr & Forman for conducting a meeting with Williams regarding a proposal that would purportedly effectuate a change of control of IPS to Guthrie without having legal counsel for IPS present. The letter made several other references to allegedly improper actions that Burr & Forman or their client had supposedly undertaken. Presumably, the beneficiary of such allegedly improper conduct was the company that emerged from the transaction between Williams, Guthrie, and Chief Container. However, as noted earlier, that company is never mentioned in the letter. Seizing on this failure, Allison has moved to dismiss the defamation count.

The court finds Davis v. Macon Telegraph Publishing Co., 93 Ga. App. 633 (1956), to be particularly instructive. At issue in that case was a newspaper article which stated that Wayman Davis

4

"and his brother" had been arrested and charged with possessing illicit whiskey. Since it is libel per se to accuse a person of having committed a misdemeanor, Ernest Davis sued the newspaper for libel. The trial court held that Ernest Davis had failed to state a claim since he had not been mentioned in the article. The Georgia Court of Appeals reversed, noting that Ernest Davis was the only brother who had ever resided in Macon and that Wayman Davis's three other brothers not only resided in Fort Myers, Florida, but were actually in Florida when Wayman Davis was arrested.

> In reversing the trial court, the Court of Appeals stated:
> The language of an alleged libel must be construed, not by what the writer intended to mean, but by the construction which would be placed upon it by the average and reasonable reader. . . . Whether or not an average and reasonable reader under the circumstances, in reading the libelous article may have determined that the unnamed party referred to therein is the plaintiff in this case is a question for the jury to determine.

93 Ga. App. at 636.

Based on *Davis*, this court concludes that a jury should determine whether the average and reasonable reader of the letter could infer from the letter that GPS was referred to in the letter.

Atlanta Journal Co. v. Farmer, 48 Ga. App. 273 (1934), and Constitution Publishing Co. v. Leathers, 48 Ga. App. 429 (1934), cited by the defendant, do not require a contrary result. In *Farmer*, the parents of Thomas Farmer, who was white, sued after a newspaper article referred to him as "a negro." The trial court held that this reference was actionable. The Georgia Court of

Appeals reversed, stating that the article "nowhere mentions the name of either of the plaintiffs, or that Thomas Farmer, mentioned therein, was in any way related to the plaintiffs, either directly or indirectly, and no person reading the publication could ascertain from its contents that either of the plaintiffs was referred to, or was intended by the publication to be referred to." *Farmer*, 48 Ga. App. at 274.

In *Leathers*, the newspaper article referred to "a red-letter day in the lives of the Chestnut Street Leathers [*sic*] and the Griffin Street Spratlins, who, according to the police, have contributed no less than five pictures to Atlanta's rogues' gallery, all five subjects being convicted or alleged bandits." The article then went on to name the five individuals. J.E. Leathers, who was not mentioned in the article filed suit for defamation, alleging that he was "named Leathers and was residing and has resided on the said Chestnut Street for a long period of time." *Leathers*. 48 Ga. App. at 431. The court of appeals held that the suit should have been dismissed since the article had named the five members of the two families and that such designation served to "exclude from the mind of the reader any imputation that the defendant intended any other person than the ones personally and specifically named." *Id*. at 434.

Unlike the situation in *Farmer*, the letter at issue in this case referred to a "possible transaction with IPS" and specifically referenced an agreement "to sell the company and its core

6

technology." Such references are sufficient to put a reader on notice that another company is involved in the transaction, and the identity of that company would be easily ascertainable by looking at the documents referred to. Moreover, unlike the situation in *Leathers*, the letter did not refer to a specific company and, thereby, exclude GPS from being identified by the reader.

For the foregoing reasons, the court holds that the complaint states a cause of action for defamation. Consequently, the defendant's motion to dismiss Count IV of the complaint [Doc. No. 43] is DENIED.

SO ORDERED, this 16th day of October, 2006.

ROBERT L. VINING, JR.
Senior United States District Judge